JACOB SHISHA
TABAK, MELLUSI & SHISHA
29 Broadway
New York, NY 10006
(212) 962-1590
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM T. JOIE | Case No.: 17 Civ |
| Plaintiff, | COMPLAINT |
| vs. | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| COUNTY OF NASSAU, | |
| Defendant | |

**ACTION UNDER SPECIAL RULE FOR SEAMEN TO SUE WITHOUT SECURITY OR PREPAYMENT OF FEE**

Plaintiff, complaining of the defendant, respectfully states and alleges upon information and belief:

**Jurisdiction and the Parties**

1. Jurisdiction is predicated on 28 U.S.C. §1331 pursuant to the "Jones Act" 46 U.S.C. §10304 and pursuant to 28 U.S.C. §1333, admiralty and general maritime jurisdiction.

2. At all times hereinafter mentioned, the defendant was and still is a government entity organized and existing under the laws of the State of New York and is located in Nassau County.

3. That at all times hereinafter mentioned, the defendant owned a fleet of police boats.

4. That at all times hereinafter mentioned the defendant operated a fleet of police boats.

5. That at all times hereinafter mentioned the defendant controlled a fleet of police boats.

6. That at all times hereinafter mentioned the defendant managed a fleet of police boats.

7. That at all times hereinafter mentioned plaintiff was in the employ of the defendant in the capacity of a seaman and as a member of the crew aboard the fleet of police boats; which at all times operated on navigable waters within this district.

**Factual Allegations**

8. On or about April 26, 2014 plaintiff was working on one of the vessels in defendant's fleet of police boats, the MARINE 7, when she was ordered to investigate a report of a loose and derelict wooden gangway floating in a canal. Plaintiff and the crew of the MARINE 7 towed the derelict gangway back to the Nassau County Police Department Marine Division's Bay Park facility, where it was lifted out of the water with a crane.

9. Rather than calling the Town of Hempstead Sanitation Department to come pick up the gangway with a flatbed truck for disposal, plaintiff's day shift supervisor/sergeant left written orders for plaintiff and his partner, to break up the gangway and dispose of it.

10. By the time plaintiff and his partner received the written orders to break up the gangway they were working the night shift. When they went to start breaking up

the gangway on the night shift, the night shift supervisor/sergeant ordered plaintiff and his partner not to break the gangway at night because it would create too much noise and disturb the nearby residential neighbors.

11. On May 8, 2014 plaintiff and his partner scheduled back to the day shift. By this time the day shift supervisor/sergeant was very upset that the gangway had not been dismantled and disposed of on the date he gave the initial written order to do so.

12. In the morning of May 8, 2014, plaintiff along with PO Timothy Leake and Michael Calab were assigned to the police boat MARINE 6; they navigated the MARINE 6 to the Bay Park facility to dismantle the derelict gangway.

13. Upon arrival at the Bay Park facility plaintiff and PO Leake retrieved power tools; a circular saw and a sawzall saw and proceeded towards the gangway to dismantle, break up and dispose of it in a dumpster. PO Calab was fueling the MARINE 6 at the time; upon completion of fueling he was going to assist in the dismantling and disposal of the gangway.

14. Before plaintiff and PO Leake were able to start dismantling the gangway, the day shift supervisor/sergeant came out to the area where the gangway was and ordered plaintiff and PO Leake not to use the power tools; rather, they were ordered to dismantle and break up the gangway using only hand tools axes and crow bars. The supervisor/sergeant also ordered PO Calab not to assist plaintiff and PO Leake because he was not on duty when they towed the gangway to the facility.

15. The day shift supervisor/sergeant ordered plaintiff and PO Leake use axes and crowbars instead of power tools and that PO Calab not assist in the job as a punitive and retaliatory measure against plaintiff and PO Leake, because the job had been delayed for several days.

16. Plaintiff and PO Leake had disassemble and break up the gangway with axes and crowbars. This was an arduous and dangerous job that took about 2 hours to complete.

17. As a result of doing this ardous work, plaintiff injured his neck, shoulder and back. Approximately, one and a half hours after finishing the job and going back out on patrol plaintiff's lower back, and right shoulder tightened up and became so painful he could not continue to work. He was sent to St. Joseph's Hospital where he was marked not fit for duty.

18. Plaintiff remained not fit for duty until June 27, 2014, at which time he was placed on light duty, due to a right rotator cuff tear and injury and aggravation of a prior asymptomatic nondisabling lower back condition, causing it to become symptomatic and disabling.

19. On December 4, 2014 plaintiff underwent surgery to his right shoulder to repair a torn rotator cuff with impingement syndrome. Plaintiff remained not fit for duty from the date of the surgery until April 2015 when he was marked fit for light duty. He then went back to full duty for 2 days in July 2016. On July 14, 2016 plaintiff underwent spinal surgery, a lumbar discectomy with fusion. He remained not fit for duty until February 3, 2017, when he returned to duty.

**First Cause of Action Jones Act Negligence and Unseaworthiness**

20. Plaintiff re-alleges the allegations set forth in paragraph 1 to 19.

21. Defendant's failure to use a flatbed truck to transport the gangway whole to the town dump; requiring plaintiff to use axes and crowbars to dismantle and breakup the gangway and place in a dumpster, preventing plaintiff from using power tools and not allowing PO Calab to assist in the dismantling, breaking up and disposing of the

gangway constituted negligence.

22. The acts, conditions and omissions described in the paragraphs above rendered the MARINE 6 unseaworthy.

23. As a result of the negligence of the defendant and the unseaworthiness of the MARINE 6 plaintiff sustained the injuries described herein, was disabled, hospitalized, has incurred loss of income, pain, suffering, loss of quality of life, will incur future loss of income/ earning potential, medical expenses and pain suffering and loss of quality of life, in an amount to be determined at trial.

### Second Cause of Action Punitive Damages

24. Plaintiff re-alleges the allegation contained in paragraphs 1 to 23.

25. Defendant's requiring plaintiff to dismantle and break up the gangway without use of proper power tools and the assistance of PO Calab was done for putative, vindictive purposes, was willful, wanton, malicious and warrants the imposition of punitive damages.

**WHEREFORE**, plaintiff demands judgment against the defendant on the First and Second Causes of Action in an amount to be determined at trial together with costs and disbursements of this action together with pre-trial and post-trial interest .

Dated: New York, New York
       March 13, 2017

TABAK, MELLUSI & SHISHA

By:_____
   JACOB SHISHA (JS 5452)
   29 Broadway
   New York, New York 10006
   **(212)-962-1590**

COMPLAINT - 5